UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>OLYMPIC GAME FARM, INC., *et al*.,<br><br>Defendants. | CASE NO. 3:22-cv-05774-RSL<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT |

This matter comes before the Court on "Defendants' Second Motion to Dismiss." Dkt. # 23. The Court dismissed plaintiff's original complaint because plaintiff had not alleged facts sufficient to suggest that it has standing to pursue the cheatgrass-related claims asserted or to raise a plausible inference that the alleged statutory violation is continuing. Plaintiff timely filed an amended complaint that addresses both issues. *See* Dkt. # 21 at ¶¶ 6 and 8 (alleging that ALDF members are prevented from observing and enjoying the bears at Olympic Game Farm because their enclosures contain cheatgrass and/or the bears are isolated in a small trailer); Dkt. # 21 at ¶ 37 (alleging that defendant James Beebe was unable to identify any bear enclosure that did not contain cheatgrass as of 2021).

**A. Standing**

While it is certainly true that plaintiff has not alleged that its members both saw cheatgrass inside the bear enclosures and knew of and appreciated the potential for harm at the time, the "injury in fact'" requirement for Article III standing can be "satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000). Plaintiff alleges that three of its members' appreciation of and emotional interests in the Olympic Game Farm bears have been impaired by defendants' conduct in that they are kept from visiting the bears because they cannot stand to see them continually at risk of cheatgrass wounds and the resulting isolation.[1] Where members of the plaintiff organization allege that they have, in the past, derived recreational and aesthetic benefit from their visits to Olympic Game Farm, but that their use has been curtailed because of their concerns about how defendants treat their animals, the allegations are sufficient to satisfy the "injury in fact" component of Article III standing. *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 994 (9th Cir. 2000); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-63 (1992) ("Of course, the desire to use or observe an animal species,

---

[1] Defendants' argument regarding the contingent and speculative nature of the claimed injury is misplaced. It is the present fact that Ms. Long and the McGees are forced to forego visits to the bears at Olympic Game Farm that constitutes injury.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT - 2

even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing.").[2]

That the members do not have first-hand knowledge of the allegedly violative conduct is not dispositive. Plaintiffs claiming injury to their established interest in a place, animal, or plant species often rely on third-party sources, such as watchdog groups, discharge reports, or news stories, for information regarding defendant's conduct. There is no requirement that they see defendant discharge chemicals, injure an animal, or destroy plant habitat in order to have standing to sue for the impairment of interests caused by those activities. The same analysis applies here.

**B. Continuing Violation**

"The Endangered Species Act of 1973 . . . contains a variety of protections designed to save from extinction species that the Secretary of the Interior designates as endangered or threatened." *Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 690 (1995). *See also* 16 U.S.C. § 1533; *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 159-60 (1978). The ESA makes it unlawful for "any person" to "take" a listed species. 16 U.S.C. § 1538(a)(1)(B). The term "take" is defined in the ESA as "harass, harm, pursue,

---

[2] Defendants assert that the members' statements about what is keeping them from enjoying the company of Olympic Game Farm's bears are simply untrue, and that there are other reasons (reasons that form the basis for a prior lawsuit filed against these same defendants) that keep the members from returning to Olympic Game Farm. That there are multiple aspects of defendants' conduct that dissuade the members from visiting the bears neither lessens their particularized interest in these animals nor remediates the injury suffered. The members' statements regarding their conditional desire to visit the bears in the future are neither inconsistent with their other representations nor incredible. Article III demands, however, that an actual case or controversy persist throughout the litigation: if discovery disproves the members' assertions, the matter can and should be revisited. *Virginia House of Delegates v. Bethune-Hill*, __ U.S. __, 139 S. Ct. 1945, 1950–51 (2019).

ORDER DENYING DEFENDANTS' MOTION TO DISMISS
THE AMENDED COMPLAINT - 3

hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The term "harm" will likely be relevant here, and it is defined as "an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3. The ESA's citizen suit provision authorizes a civil suit to enjoin alleged violations of the ESA or the regulations issued by the Fish and Wildlife Service ("FWS") under the Act's authority. 16 U.S.C. § 540(g)(1). Thus, plaintiff must allege facts giving rise to a plausible inference that the statutory violation is on-going or that there is at least a reasonable likelihood that the violation will continue in the future. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987) (interpreting identical language in the Clean Water Act).

     Plaintiff's amended allegations give rise to a plausible inference that the alleged ESA violation – the housing of the Grizzly bears in cheatgrass-infested enclosures causing death or injury – is on-going or imminent. Plaintiff alleges that the bears living at Olympic Game Farm are currently exposed to cheatgrass in their enclosures, that defendants are aware that cheatgrass seed pods can work into an animal's skin, that cheatgrass has harmed bears as recently as 2020, that older bears, such as those at Olympic Game Farm, are particularly susceptible to cheatgrass injuries, and that defendants' attempts to eradicate cheatgrass have been unsuccessful. Plaintiff specifically alleges that, given the facts set forth above, "the cheatgrass conditions are highly likely to continue to wound and cause

other ESA take of the Grizzly bears" at Olympic Game Farm. Dkt. # 21 at ¶ 58. In the context of this motion to dismiss, the Court declines to second-guess these factual allegations or to determine whether the conditions alleged constitute a take for purposes of the ESA.

For all of the foregoing reasons, defendants' second motion to dismiss (Dkt. # 23) is DENIED.

Dated this 30th day of May, 2023.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge